## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARIA SERRANO
74 Webster Street, NE
Washington, DC 20011,

    *Plaintiff,*

  v.

CHICKEN-OUT INC.,
15852 Shady Grove Road
Gaithersburg, MD 20877,

CHICKEN OUT THE DOOR INC.,
9314 Montpelier Drive
Laurel, MD 20708,

NICHOLAS CORDONE,
7224 Armat Drive
Bethesda, MD 20817,

RICHARD HINDIN,
4615 Foxhall Crescent, NW
Washington, DC 20007,

JOSEPH MARINUCCI,
509 Oneida Place, NW
Washington, DC 20011,

    *Defendants.*

Case No. 15-CV-276

Collective Action and Class Action
Complaints

**JURY TRIAL DEMANDED**

## NATURE OF ACTION

1. Plaintiff Maria Serrano brings this action for failure to pay overtime and other wages due on behalf of herself and other similarly situated non-exempt workers who were or currently are employed by Defendants.

2.      The Defendants in this action are several entities and persons that, acting as a joint employer and/or an integrated enterprise, have done and do business under variations of the name Chicken Out.

3.      Chicken Out was formed in 1991. As of 2007, there were approximately twenty Chicken Out restaurants in the District of Columbia, Maryland, and Virginia. Defendants closed most of those restaurants during the time period at issue in this case. They currently operate one Chicken Out restaurant.

4.      From approximately June 2010 through October 2013, Ms. Serrano worked as a salad and sandwich maker and cashier at a Chicken Out restaurant located on Massachusetts Avenue in the District of Columbia. Although she regularly worked more than forty hours per workweek, Defendants never paid her, or other similarly situated workers, overtime wages, in violation of the federal Fair Labor Standards Act ("FLSA") and the D.C. Minimum Wage Revision Act ("DCMWA").

5.      From November 2013 through May 2014, Ms. Serrano worked as a salad and sandwich maker and cashier at a Chicken Out restaurant located on Rockville Pike in Rockville, Maryland. Ms. Serrano again regularly worked more than forty hours per workweek, but Defendants never paid her, or other similarly situated workers, overtime wages, in violation of the FLSA and the Maryland Wage and Hour Law ("MWHL").

6.      Defendants' refusal to pay Ms. Serrano and other similarly situated workers overtime was the product of a policy determined by the top management.

7.      Defendants furthermore failed to post in a conspicuous location in the D.C. and Rockville restaurants any notice of employees' rights under the FLSA, as required by 29 C.F.R. § 516.4.

8.      Defendants terminated Ms. Serrano on or around May 15, 2014, when they closed the restaurant where she was then employed. To date, Ms. Serrano has never been compensated for the last three weeks of work she performed for Defendants, in violation of the Maryland Wage Payment Collection Act ("MWPCA").

9.      With respect to her overtime claims, Ms. Serrano brings this as a collective action under the FLSA, 29 U.S.C. § 216(b), on behalf of herself and all other persons employed by Defendants in non-exempt positions and whom Defendants failed to pay overtime compensation as required by § 207(a) at any time within the three-year period preceding the filing of this complaint through the date of the final disposition of this action ("FLSA Collective Action Members").

10.     With respect to her overtime claim at the D.C. restaurant, Ms. Serrano also brings this as a collective action under the DCMWA, D.C. Code § 32-1012(b), on behalf of herself and all other persons employed by Defendants in non-exempt positions in restaurants located in the District of Columbia and whom Defendants failed to pay overtime compensation as required by Section 32-1003(c) at any time within the three-year period preceding the filing of this complaint through the date of the final disposition of this action ("D.C. Collective Action Members").

11.     With respect to her overtime claim at the Rockville restaurant, Ms. Serrano brings this as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and all other persons employed by Defendants in non-exempt positions in restaurants located in Maryland and whom Defendants failed to pay overtime compensation as required by Maryland Code, Labor & Employment Sections 3-415 and 3-420 at any time within the three-year period preceding the filing of this complaint through the date of the final disposition of this action ("Maryland Class Action Members").

12.     On behalf of herself and all other FLSA Collective Action Members, D.C. Collective Action Members, and Maryland Class Action Members, Ms. Serrano seeks declaratory relief; damages, including unpaid overtime premiums for all overtime work required, suffered, or permitted by Defendants; other damages, including liquidated damages; pre-judgment and post-judgment interest; and reasonable attorneys' fees and costs incurred in this action. Ms. Serrano further seeks injunctive relief that ensures that Defendants comply with the overtime requirements under federal law and the laws of the District of Columbia, Maryland, and Virginia.

13.     Ms. Serrano further seeks treble damages and reasonable costs and attorneys' fees for her final three weeks of work at Defendants' Rockville location, for which she has never been compensated.

## PARTIES

14.     Plaintiff Maria Serrano is a resident of the District of Columbia. Between 2010 and 2014, she was employed as a salad and sandwich maker and cashier at two chicken restaurants doing business under variations of the name Chicken Out. Throughout her employment, she used her married name, Maria Serrano Ramirez. Following a divorce, Ms. Serrano now uses her maiden name.

15.     Defendant Chicken-Out Inc. is a corporation incorporated under the laws of Maryland. It owned and operated Chicken Out restaurants located in the District of Columbia, Maryland, and Virginia.

16.     Defendant Chicken Out the Door Inc. is a corporation incorporated under the laws of Maryland. It has owned and operated Chicken Out restaurants located in the District of Colombia, Maryland, and Virginia.

17.     Defendant Richard Hindin is a natural person who resides in Washington, D.C. He is the former president and CEO of Chicken-Out Inc., in which capacity he operated Chicken Out restaurants in the District of Columbia, Maryland, and Virginia. Although Hindin sold his interest in some of these restaurants during the time period at issue in this complaint, he continued to play a substantial role in operating them during the relevant time period.

18.     Defendant Joseph Marinucci is a natural person who resides in Washington, D.C. He is the current owner of Chicken Out the Door Inc., in which capacity he owns and operates a Chicken Out restaurant in Virginia. He previously owned and operated Chicken Out restaurants in the District of Columbia and Maryland.

19.     Defendant Nicholas Cordone is a natural person who resides in Bethesda, Maryland. Since 2012, Cordone has operated the Chicken Out enterprise with Hindin and Marinucci, including the operation of restaurants located in the District of Columbia, Maryland, and Virginia. Cordone has also operated a night club located in the District of Columbia.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over Plaintiff's claim under the FLSA pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

21.     This Court has supplemental jurisdiction over Plaintiff's remaining claims, which arise under the laws of Maryland and the District of Columbia, pursuant to 28 U.S.C. § 1367(a) because those claims derive from a common nucleus of operative fact as Plaintiff's federal cause of action relating to Defendants' violations of wage-and-hour laws.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Venue is also proper because Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### *Chicken Out Operations and Bankruptcy*

23.     Operating as a joint employer and/or an integrated enterprise, during the time period relevant to this action Defendants have operated chicken restaurants at locations in the District of Columbia, Maryland, and Virginia, using variations on the name Chicken Out.

24.     Chicken Out was formed in 1991. As of 2007, there were approximately 20 Chicken Out restaurants in the District of Columbia, Maryland, and Virginia.

25.     Defendants currently operate one Chicken Out restaurant located in McLean, Virginia. They also provide catering services throughout the D.C.-Maryland-Virginia area.

26.     Additionally, the owners of Chicken Out operated at least one additional restaurant in 2014, using a different name but drawing upon Chicken Out resources and employees.

27.     As of July 2011, Defendants Chicken-Out Inc. and Hindin operated nine Chicken Out locations in the D.C.-Maryland-Virginia metropolitan area. At that time, Chicken-Out Inc. filed a voluntary petition for bankruptcy relief.

28.     In January 2012, the U.S. Bankruptcy Court for the District of Maryland entered an order approving the sale of Chicken-Out Inc.'s assets to Defendant Joseph Marinucci and Defendant Chicken Out the Door Inc.

29.     Pursuant to the sale, Chicken-Out Inc. sold six of its nine restaurants to Defendants Marinucci and Chicken Out the Door Inc., including the D.C. restaurant where Ms. Serrano was then employed and the Rockville restaurant where she worked beginning in November 2013.

30.     Defendants Marinucci and Cordone both signed the asset transfer agreement on behalf of Chicken Out the Door Inc. Each of these Defendants has authority to sign checks on behalf of Chicken Out the Door Inc.

31.     Chicken-Out Inc., Hindin, Chicken Out the Door Inc., Marinucci, and Cordone jointly operated the three remaining stores in Shady Grove, Maryland; McLean, Virginia; and Milestone, Maryland until May 2012. These Defendants jointly managed the restaurants from a central office that they all shared.

32.     Hindin continued to be employed by Chicken Out the Door Inc. following the sale of assets.

33.     On behalf of Chicken-Out Inc. and Chicken Out the Door Inc., Defendants Cordone, Hindin, and Marinucci determined employment policies for all employees who worked in Chicken Out restaurants or provided Chicken Out catering services, including the pay rates and the policy not to pay overtime wages as described below.

34.     Also following the sale of assets, Chicken-Out Inc., Hindin, Chicken Out the Door Inc., Marinucci, and Cordone jointly provided catering services using the business name Chicken Out.

35.     The website www.chickenout.com provides Cordone's email address as the point of contact for inquiries from the public.

36.     Chicken Out the Door Inc., Marinucci, and Cordone currently operate one Chicken Out location in McLean, Virginia and provide catering services. Additionally, in 2014 they operated at least one other restaurant in Gaithersburg, Maryland, where, among other things, they filled catering orders placed to Chicken Out's phone number.

*Ms. Serrano's Employment at Chicken Out*

37.     In the summer of 2010, Ms. Serrano was hired as a salad and sandwich maker and cashier at a Chicken Out restaurant located at 4866 Massachusetts Avenue Northwest, in Washington, D.C. She was paid an hourly wage of $9.00 per hour.

38.     Ms. Serrano regularly worked forty-two hours per week throughout the duration of her employment at the D.C. Chicken Out restaurant; sometimes she worked even more hours in a week. Although she consistently worked more than forty hours per workweek, Defendants never paid Ms. Serrano any overtime wages.

39.     Upon information and belief, Defendants also refused to pay overtime wages to other similarly situated employees who worked more than forty hours per workweek at the D.C. Chicken Out restaurant.

40.     Defendants failed to post a notice explaining overtime requirements under the FLSA in a conspicuous place in the D.C. restaurant, in violation of 29 C.F.R. § 516.4.

41.     The D.C. Chicken Out restaurant closed in about October 2013, at which time Ms. Serrano's employment ceased.

42.     Approximately five weeks after the D.C. restaurant's closure, Ms. Serrano's manager, Javier Basque, asked her to work as a salad and sandwich maker and cashier at a Chicken Out restaurant located at 1550 Rockville Pike in Rockville, Maryland.

43.     From late November 2013 through March 2014, Ms. Serrano regularly worked at least forty-six hours per week at the Rockville restaurant. Although she consistently worked more than forty hours per workweek, Defendants never paid Ms. Serrano any overtime wages.

44.     Upon information and belief, Defendants also refused to pay overtime wages to other similarly situated employees who worked more than forty hours per workweek at the Rockville Chicken Out restaurant.

45.     Defendants failed to post a notice explaining overtime requirements under the FLSA in a conspicuous place in the Rockville restaurant, in violation of 29 C.F.R. § 516.4.

46.     Whenever Ms. Serrano asked her manager about overtime pay, she was told that she would not be paid overtime and that she should be grateful for the extra hours of work.

47.     Pay rates and the decision not to pay for overtime came from top management, including Hindin on behalf of Chicken-Out Inc. before the 2012 asset transfer and Hindin, Marinucci, and Cordone on behalf of Chicken-Out Inc. Chicken Out the Door Inc. following the 2012 asset transfer and consolidation.

48.     From April 2014 through May 2014, Ms. Serrano worked thirty-four hours per week at the Rockville restaurant. The restaurant closed on or around May 15, 2014, at which time Ms. Serrano's employment with Chicken Out was terminated.

49.     Ms. Serrano has never been paid for the hours she worked at the Rockville restaurant between approximately April 28, 2014, and May 15, 2014.

50.     A manager for Chicken Out asked Ms. Serrano to work at the McLean restaurant after the closure of the Rockville restaurant in 2014. Because Defendants have never paid her for her last three weeks of work, Ms. Serrano refused.

51.     Ms. Serrano and other employees who worked at the Rockville restaurant have not received their W-2 forms for 2014.

## COLLECTIVE ACTION ALLEGATIONS

52.     Ms. Serrano re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 51 above.

53.     Ms. Serrano brings the First Cause of Action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of herself and all similarly situated persons who were, are, or will be employed in the District of Columbia, Maryland, or Virginia by Defendants within the three-year period preceding the filing of this complaint through the date of the final disposition of this action, and whom Defendants have failed to compensate at a rate of at least one and one-half times the employees' regular rate of pay for all time worked that exceeded or exceeds forty hours in a workweek.

54.     At all relevant times, Ms. Serrano and the other FLSA Collective Action Members have been similarly situated; have had substantially similar job requirements, job duties, and pay provisions; and have been subject to Defendants' common decisions, policies, programs, practices, procedures, protocols, routines, and rules for failing and refusing to pay them at the legally required time-and-a-half rate for work in excess of forty hours per workweek.

55.     Ms. Serrano and the FLSA Collective Action Members are not and have never been exempt from the overtime pay requirement and are and always have been entitled to overtime pay for all overtime hours worked.

56.     The First Cause of Action is properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b). The FLSA Collective Action Members are readily ascertainable. Their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Action Members via first-class mail to the last address known to Defendants.

57.     Ms. Serrano brings the Second Cause of Action as a collective action pursuant to the DCMWA, D.C. Code Section 32-1012(b), on behalf of herself and all persons who were, are, or will be employed in the District of Columbia by Defendants within the three-year period preceding the filing of this complaint through the date of the final disposition of this action, and whom Defendants have failed to compensate at a rate not less than one and one-half times the employees' regular rate of pay for all time worked that exceeds or exceeded forty hours in a workweek as required by Section 32-1003(c).

58.     At all relevant times, Ms. Serrano and the other D.C. Collective Action Members have been similarly situated; have had substantially similar job requirements, job duties, and pay provisions; and have been subject to Defendants' common decisions, policies, programs, practices, procedures, protocols, routines, and rules for failing and refusing to pay them at the legally required time-and-a-half rate for work in excess of forty hours per workweek.

59.     Ms. Serrano and the other D.C. Collective Action Members are not and have never been exempt from overtime pay requirements and are and always have been entitled to overtime pay for all overtime hours worked.

60.     The Second Cause of Action is properly brought under and maintained as an opt-in collective action pursuant to D.C. Code Section 13-1012(b). The D.C. Collective Action Members are readily ascertainable. Their names and addresses are readily available from Defendants. Notice can be provided to the D.C. Collective Action Members via first-class mail to the last address known to Defendants.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 60 above.

62.     Ms. Serrano brings the Third Cause of Action as a class action pursuant to Rule 23(a) and Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all persons who were, are, or will be employed in the State of Maryland by Defendants within the three-year period preceding the filing of this complaint through the date of the final disposition of this action, and whom Defendants have failed to compensate at a rate not less than one and one-half times the employees' regular rate of pay for all time worked that exceeds or exceeded forty hours in a workweek as required by Maryland Code, Labor and Employment Sections 3-415 and 3-420.

63.     At all relevant times, Ms. Serrano and the other Maryland Class Members have been similarly situated; have had substantially similar job requirements, job duties, and pay provisions; and have been subject to Defendants' common decisions, policies, programs, practices, procedures, protocols, routines, and rules for failing and refusing to pay them at the legally required time-and-a-half rate for work in excess of forty hours per workweek.

64.     Ms. Serrano and the other Maryland Class Members are not and have never been exempt from overtime pay requirements and are and always have been entitled to overtime pay for all overtime hours worked.

65.     At all relevant times, Defendants have maintained a policy and/or practice of refusing to pay any of their non-exempt employees the required one and one-half times the employees' regular rate of pay for all time worked that exceeds or exceeded forty hours in a workweek.

66.     The proposed Maryland Class claim is brought, and may properly be maintained as, a class action under Rule 23(a) and Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

67.     The Maryland Class consists of all non-exempt employees employed by
Defendants in Maryland during the three-year period preceding the filing of this complaint
through the date of the final disposition of this action. Throughout the relevant time period,
Defendants operated up to six restaurants in Maryland, each of which had several non-exempt
workers at any given time, in addition to non-exempt employee turnover. Upon information and
belief, the Class therefore consists of more than forty members and, as such, is so numerous that
joinder of all members would be impracticable.

68.     Common questions of law and fact exist as to all members of the Maryland Class
that predominate over any questions affecting individual members, including:

   a.   Whether Defendants are subject to the overtime payment requirements established
        under Maryland Law;

   b.   Whether Defendants violated Maryland Code, Labor and Employment Sections 3-
        415 and 3-420 by refusing to pay their non-exempt Maryland employees overtime
        at a rate not less than one and one-half times their regular rate of pay for all time
        worked that exceeds or exceeded forty hours in a workweek; and

   c.   Whether Defendants' refusal to pay overtime was willful.

69.     Ms. Serrano's claims are typical of those of the Maryland Class. Ms. Serrano was
a non-exempt employee who, like other members of the Maryland Class, was subjected to
Defendants' policy and/or practice of refusing to pay overtime compensation to non-exempt
employees.

70.     Ms. Serrano will fairly and adequately represent and protect the interests of the
putative members of the Maryland Class. She has no conflict(s) of interest that would be

antagonistic to those of other class members. She has retained counsel who are competent and experienced in class action and wage and hour litigation.

71.     Defendants have acted on grounds that apply generally to the Maryland Class in that they have maintained a policy and/or practice of refusing to pay overtime compensation to their non-exempt employees. Accordingly, injunctive and declaratory relief is appropriate for the Maryland Class as a whole.

72.     The common questions of law and fact identified above predominate over any issues affecting only individual class members. Class treatment is superior to alternative methods to adjudicate this dispute because Ms. Serrano and the similarly situated Maryland employees have suffered similar treatment and harm as a result of Defendants' systematic policies and/or practices, and because absent class treatment, Defendants' unlawful conduct will likely continue unabated, given that the lost wages suffered by individual class members may be small compared to the expense and burden of individual litigation. Class certification is also superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' overtime policies and/or practices.

73.     No difficulties are likely to be encountered in the management of this class action, and the identity of the Maryland Class Members should be readily available from Defendants' records.

74.     In the alternative, this action can be certified and maintained as a class action with respect to particular issues, pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure, including Defendants' liability under the MWHL, whether Defendants had a policy and/or practice of refusing to pay overtime wages, and whether Defendants willfully maintained that policy and/or practice notwithstanding the applicability of the MWHL.

14

## CAUSES OF ACTION

### COUNT I:
### Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*:
### Failure to Pay Overtime

75.     Plaintiff re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 74 above.

76.     At all times relevant to this action, Ms. Serrano, and all others similarly situated, have been "employees" and Defendants have been their "employers" within the meaning of 29 U.S.C. § 203.

77.     Ms. Serrano has filed a signed consent to sue in this action pursuant to 29 U.S.C. §§ 216(b) and 256. Additional FLSA Collective Action Members will sign consent to sue forms and will join this action as plaintiffs in the future.

78.     Section 207(a)(1) of the FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty] hours . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

79.     Ms. Serrano and all other FLSA Collective Action Members are not exempt from the right to receive overtime pay under the FLSA and are not exempt from the requirement that their employer pay them overtime compensation under the FLSA. They are entitled to be paid overtime compensation for all overtime hours worked.

80.     Defendants have violated and continue to violate 29 U.S.C. §§ 207(a)(1) and 215(a) by knowingly failing to compensate Ms. Serrano, and all others similarly situated, at the rate of one and one-half of her regular hourly pay for all time worked in excess of forty hours in any one workweek.

81.     At all relevant times, Defendants had and continue to have a policy and practice of failing and refusing to pay overtime compensation to the FLSA Collective Action Members for all time worked in excess of forty hours per workweek, in violation of 29 U.S.C. §§ 207(a)(1) and 215(a).

82.     Defendants' violations of the FLSA were repeated, willful, intentional, and in bad faith.

## COUNT II:
## Violation of D.C. Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*: Failure to Pay Overtime

83.     Ms. Serrano re-alleges and incorporates by reference the allegations set forth in paragraphs 1-82 above.

84.     The DCMWA provides that "[n]o employer shall employ any employee for a workweek that is longer than 40 hours, unless the employee receives compensation for employment in excess of 40 hours at a rate not less than 1 1/2 times the regular rate at which the employee is employed." D.C. Code § 32-1003(c).

85.     At all relevant times to this action, Ms. Serrano, and all others similarly situated, were "employees" and Defendants were their "employers" within the meaning of D.C. Code Section 32-1002.

86.     Ms. Serrano has filed a signed consent to sue in this action pursuant to D.C. Code Section 32-1012(b). Additional D.C. Collective Action Members will sign consent to sue forms and will join this action as plaintiffs in the future.

87.     Defendants violated the DCMWA by knowingly failing to compensate Ms. Serrano, and other similarly situated individuals, at a rate not less than one and one-half times their regular hourly rates for every hour worked in excess of forty hours in any one workweek.

88.     Defendants' violations of the DCMWA were repeated, willful, intentional, and in bad faith.

## COUNT III:
## Violation of Md. Wage & Hour Law, Md. Code Lab. & Empl. § 401 *et seq.*:
## Failure to Pay Overtime

89.     Ms. Serrano re-alleges and incorporates by reference the allegations set forth in paragraphs 1-88 above.

90.     Under the MWHL, an employer must "pay an overtime wage of at least 1.5 times the usual hourly wage" for each hour over forty hours that an employee works during one workweek. Md. Code, Lab. & Employment, §§ 3-415, 3-420.

91.     At all relevant times to this action, Defendants were the "employers" of Ms. Serrano, and all other similarly situated employees, within the meaning of Section 3-401, and had a gross annual income of more than $400,000.

92.     Defendants violated the MWHL by knowingly failing to compensate Ms. Serrano, and all others similarly situated, at the rate of one and one-half of their regular hourly rate for every hour worked in excess of forty hours in any one workweek.

93.     Defendants' violations of the MWHL were repeated, willful, intentional, and in bad faith.

## COUNT IV:
## Violation of Md. Wage Payment & Collection Act, Md. Code Lab. & Empl. § 3-501 *et seq.*

94.     Ms. Serrano re-alleges and incorporates by reference the allegations set forth in paragraphs 1-93 above.

95.     The MWPCA provides that an employer must pay each employee "at least once in every 2 weeks or twice in each month." Md. Lab. & Empl. Code § 3-502(a)(1). Upon cessation of employment, an employer must pay an employee "all wages due for work that the

employee performed before the termination of employment, on or before the day on which the

employee would have been paid the wages if the employment had not been terminated." *Id.*, § 3-

505(a).

96.     At all relevant times to this action, Defendants were the "employers" of Ms.

Serrano, within the meaning of Section 3-501.

97.     Defendants violated the MWPCA by knowingly failing to pay Ms. Serrano at

least once in every two weeks or twice in each month in April and May 2014.

98.     Defendants violated the MWPCA by knowingly failing to pay Ms. Serrano all

wages due for work that she performed between April 28, 2014, and May 15, 2014, when her

employment was terminated. Ms. Serrano has never been compensated for the work she

performed during this time period.

99.     Defendants' violations of the MWPCL were repeated, willful, intentional, and in

bad faith.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and others similarly situated, respectfully

requests that this Court:

A.  Declare the First and Second Causes of Action to be maintainable as a collective

    action pursuant to the FLSA, 29 U.S.C. § 216(b), and the DCMWA, D.C. Code § 32-

    1012(b), respectively, and direct Defendants to provide Plaintiff with a list of all

    persons employed by them as non-exempt employees during the FLSA Collective

    Action and D.C. Collective Action periods, including the last known address and

    telephone number of each such person, so that Plaintiff can give such persons notice

of this action and an opportunity to make an informed decision about whether to
participate in it.

B.  Declare the Third Cause of Action to be maintainable as a class action under Rule
    23(a) and Rule 23(b)(2), 23(b)(3), and/or 23(c)(4);

C.  Declare that Defendants willfully violated Plaintiff's rights, and the rights of the other
    FLSA Collective Action Members, D.C. Collective Action Members, and Maryland
    Class Members under the FLSA, the DCMWA, the MWHL, and the MWPCA.

D.  Determine the damages sustained by Plaintiff, the FLSA Collective Action Members,
    the D.C. Collective Action Members, and the Maryland Class Members as a result of
    Defendants' willful and intentional violations of the FLSA, 29 U.S.C. § 207(a); the
    DCMWA, D.C. Code § 32-1003(c); the MWHL, Md. Code, Lab. & Empl. § 3-415;
    and the MWPCL, Md. Code, Lab. & Empl. § 3-505(a), and award such backpay and
    unpaid overtime wages against Defendants in favor of Plaintiff and all similarly
    situated individuals, plus an additional equal amount as liquidated damages pursuant
    to 29 U.S.C. § 216(b); D.C. Code § 32-1012(b); and Md. Code, Lab. & Empl., § 3-
    427; and treble damages under Md. Code, Lab. & Empl. § 3-507.2.

E.  Award Plaintiff and each member of the FLSA Collective Action, D.C. Collective
    Action, and Maryland Class Action pre-judgment interest on all amounts owed;

F.  Enjoin Defendants to comply with all applicable federal and state wage laws,
    including to:

    i.  Post a conspicuous notice explaining the FLSA and summarizing the
        DCWMA and the MWHL in each of their restaurants;

      ii.      Pay all wages earned, including overtime wages, to Defendants'

employees at least twice during each calendar month, on regular paydays

designated in advance;

      iii.      Promptly pay any and all outstanding wages of any terminated employee.

G.  Award Plaintiff her costs and reasonable attorneys' fees incurred in this action, as

provided by 29 U.S.C. § 216(b); D.C. Code § 32-1012(c); Md. Code, Lab. & Empl. §

3-427; and Md. Code, Lab. & Empl. § 3-507.2.

H.  Grant such other further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff, on behalf of herself and all others similarly situated, demands a trial by jury on

all claims so triable.


Dated: February 24, 2015

Respectfully submitted,

/s/ Jamie L. Crook
Jennifer I. Klar (DC Bar No. 479629)
Sasha Samberg-Champion (*pro hac vice* application to be submitted)
Jamie L. Crook (DC Bar No. 1002504)
RELMAN, DANE & COLFAX PLLC
1225 19th Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Facsimile: (202) 728-0848
jklar@relmanlaw.com
ssamberg-champion@relmanlaw.com
jcrook@relmanlaw.com

/s/ Matthew K. Handley
Matthew K. Handley (DC Bar No. 489946)
Dennis A. Corkery (DC Bar No. 1016991)
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS

11 Dupont Circle, NW, Suite 400
Washington, DC 20036
Telephone:  (202) 319-1000
Facsimile:  (202) 319-1010
Dennis.Corkery@washlaw.org
Matthew.Handley@washlaw.org