## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| MARIA SERRANO, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | Civ. No. 15-cv-0276 (KBJ) |
| | ) | |
| CHICKEN-OUT INC., *et al.*, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## MEMORANDUM OPINION ADOPTING
## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Plaintiff Maria Serrano ("Plaintiff") filed her complaint in this matter on

February 24, 2015, alleging that defendants Chicken-Out, Inc. ("Chicken-Out"),

Chicken Out the Door Inc. ("Chicken Out the Door"), Nicholas Cordone, Richard

Hindin, and Joseph Marinucci failed to pay her overtime and other wages that were due

to her under the Fair Labor Standards Act ("FLSA") and D.C. and Maryland wage laws.

Plaintiff has since voluntarily dismissed her claims against defendants Cordone, Hindin,

and Marinucci.  (*See* Mot. to Dismiss Claims Against Defs. Nicholas Cordone, Joseph

Marinucci, & Richard Hindin Without Prejudice ("Mot. to Dismiss"), ECF No. 28;

Minute Order of Jan. 12, 2016 Granting Mot. to Dismiss.)[1]

Plaintiff served the complaint on Chicken Out the Door on April 1, 2015, and

later served Chicken-Out on May 5, 2015.  (*See* Return of Service/Affidavit, ECF No.

10; Return of Service/Affidavit, ECF No. 17.)  On May 11, 2015, the Clerk of Court

---

[1] Plaintiff initially pled collective and class action claims for violations of the various wage statutes at issue, but has since voluntarily dismissed those claims as well.  (*See* Notice of Voluntary Dismissal of Class & Collective Action Claims Pursuant to FRCP 41(a)(1)(A)(i), ECF No. 30.)

filed an entry of default against Chicken Out the Door, noting that that defendant had failed to respond to the complaint or otherwise defend itself in this litigation.  (*See* Entry of Default, ECF No. 14.)  The Clerk of Court similarly filed an entry of default against Chicken-Out on June 29, 2015.  (*See* Entry of Default, ECF No. 20.)  Plaintiff moved for default judgment with respect to her claims against Chicken Out the Door and Chicken-Out on February 24, 2016 (*see* ECF No. 31), and on April 12, 2016, this Court referred Plaintiff's motion for default judgment to a Magistrate Judge for a report and recommendation (*see* Minute Order of April 12, 2016).[2]

The assigned Magistrate Judge, G. Michael Harvey, issued a Report and Recommendation regarding Plaintiffs' motion on May 13, 2016 (R &R, ECF No. 12, attached hereto as Appendix A), which reflects his belief that Plaintiff's motion for default judgment should be granted in part and denied in part.  (R & R. at 1.) Specifically, Magistrate Judge Harvey found that Chicken Out the Door and Chicken-Out "willfully violated the FLSA, DCMWA, MWHL, and MWPCL when they failed to pay Plaintiff overtime compensation and failed to pay her for her last two-and-a-half weeks of work[,]" (*id.* at 10), and that Plaintiff is entitled to the full amount of unpaid wages, overtime compensation, liquidated damages, attorney's fees, and costs that she requests in her motion, as well as post-judgment interest (*id.* at 10–25).  Magistrate Judge Harvey recommended that this Court deny Plaintiff's request for prejudgment interest under the FLSA because that statute delineates the exclusive remedies for any violations—specifically, unpaid wages, unpaid overtime, and liquidated damages—and

---

[2] Chicken Out the Door and Chicken-Out have not responded to the motion for default judgment, or otherwise appeared in this action.

the Report and Recommendation recommends that this Court award those remedies. (*Id.* at 25–26.)

Magistrate Judge Harvey's Report and Recommendation also specifically advised the parties that failure to file timely objections may result in waiver of further review of the matters addressed in the Report and Recommendation.  (*Id.* at 26.)  Under this Court's local rules, any party who objects to a Report and Recommendation must file a written objection with the Clerk of the Court within 14 days of the party's receipt of the Report and Recommendation.  LCvR 72.3(b).

As of the current date—more than two months after the Report and Recommendation was issued—no objections have been filed.  Moreover, this Court has reviewed Magistrate Judge Harvey's Report and Recommendation, and it agrees with the report's analysis and conclusions.  Therefore, as set forth in the separate order that accompanies this Memorandum Opinion, the Report and Recommendation of the Magistrate Judge entered in this matter on May 13, 2016, is **ADOPTED** in its entirety. Accordingly, Plaintiff's Motion for Default Judgment is **GRANTED in part and DENIED in part**, and **JUDGMENT IS ENTERED IN FAVOR OF PLAINTIFF** in the amount of $5,628.00 in unpaid wages, overtime compensation, and liquidated damages; $1,609.30 in attorney's fees; and $574.50 in costs, plus post-judgment interest as provided in 28 U.S.C. § 1961.[3]

DATE:  July 22, 2016

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[3] Plaintiff's collective action claims are dismissed pursuant to her notice of voluntary dismissal (*see supra* n. 1); therefore, no separate order dismissing these claims is required.  *See* Fed. R. Civ. P 41(a)(1)(a).

Appendix A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**MARIA SERRANO**                       )
                                        )
        **Plaintiff,**                  )
                                        )
        **v.**                          )        **Case No. 15-cv-276 (KBJ/GMH)**
                                        )
**CHICKEN-OUT, INC. et al.**            )
                                        )
        **Defendants.**                 )
_____)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for a report and recommendation on Plaintiff's motion for default judgment.  Defendants Chicken-Out, Inc. and Chicken Out the Door, Inc. employed Plaintiff in their fast-food restaurants.  They did not pay her overtime and other wages she was due under the Fair Labor Standards Act ("FLSA") and D.C. and Maryland law.  As a result, she brought the instant suit.  Defendants failed to appear, forcing Plaintiff to seek a default judgment against them.  After reviewing the entire record,[1] the undersigned recommends that the Court grant in part and deny in part Plaintiff's motion.

## BACKGROUND

Defendants operated fast-food chicken restaurants in the District of Columbia, Maryland, and Virginia.  Compl. ¶ 23.  Plaintiff initially worked at one of Defendants' D.C. locations as a salad and sandwich maker and as a cashier.  Id. ¶ 37.  She worked at this restaurant beginning in the summer of 2010.  Id.  She was paid a wage of $9.00 per hour.  Id.  She regularly worked

---

[1] The relevant docket entries for purposes of this Report and Recommendation are: (1) Plaintiff's Complaint ("Compl.") [Dkt. 1]; (2) Plaintiff's Motion for Default Judgment as to Defendants Chicken-Out and Chicken Out the Door ("Mot.") [Dkt. 31]; and (3) Plaintiff's Corrected Memorandum in Support of Plaintiff's Motion for Default Judgment ("Memo.") [Dkt. 32-1].

Appendix A

forty-two hours per week but was never paid overtime wages.  Id. ¶ 38.  The D.C. restaurant

where she worked closed in October 2013, at which time Plaintiff's employment ceased.  Id. ¶

41.

Approximately five weeks later, Defendants asked Plaintiff to work in the same capacity

at one of their Rockville, Maryland locations.  Id. ¶ 42.  She worked at the Maryland restaurant

from late November 2013 through May 15, 2014, when that restaurant too closed.  Id. ¶¶ 43, 48.

For the period from her start at the Rockville restaurant through March 2014, Plaintiff again

consistently worked forty-six hours per week but was never paid overtime wages.  Id.

Defendants justified this failure by telling Plaintiff that they did not pay overtime and that "she

should be grateful for the extra hours of work."  Id. ¶ 46.  For the period from April 2014 to the

restaurant's closure, Plaintiff did not work any overtime.  Id. ¶ 48.  However, she claims that she

was never paid at all for her work from April 28, 2014, to May 15, 2014.  Id. ¶ 49.  After the

Rockville location closed, Defendants asked Plaintiff to work at their restaurant in McLean,

Virginia.  Id. ¶ 50.  Because she had not been paid for her two-and-a-half weeks of work, she

refused.  Id.

In this suit, Plaintiff claims that Defendants' failure to pay her overtime wages violated

the FLSA, 29 U.S.C. § 201 et seq., the D.C. Minimum Wage Act Revision Act ("DCMWA"),

D.C. Code § 32-1001 et seq., and the Maryland Wage and Hour Law ("MWHL"), Md. Code

Lab. & Empl. § 401 et seq.  Compl. ¶¶ 75–93.  She further claims that Defendants' failure to pay

her at all for her last two-and-a-half weeks of work at the Rockville restaurant violated the

Maryland Wage Payment and Collection Law ("MWPCL"),[2] Md. Code Lab. & Empl. § 3-501 et

---

[2] Plaintiff refers to this statute as the "Maryland Wage Payment and Collection Act" in her complaint, but the statute
provides that its short title should be the "Maryland Wage Payment and Collection Law."  Md. Code Lab. & Empl. §
3-509.

seq. Compl. ¶¶ 94–99.  As relief, Plaintiff requests that the Court award her:  (1) the unpaid

wages and overtime compensation which she is owed, plus an additional amount as liquidated

damages; (2) prejudgment interest on all amounts owed; and (3) her reasonable costs and

attorney's fees incurred in this action.  Compl. at 18–20.

Plaintiff originally brought these claims against three additional defendants – individuals

whom Plaintiff alleged were owners or managers of the two corporate defendants.  See id. ¶¶ 17–

19.  On Plaintiff's motion, those three defendants have been dismissed from this case.  See Jan.

13, 2016 Minute Order.  Plaintiff also originally brought her claims under the FLSA, the

DCMWA, and the MWHL on her own behalf and on behalf of those similarly situated – known

in the wage-law world as a "collective action" – she has requested that those claims be

voluntarily dismissed.  See Notice of Voluntary Dismissal of Class and Collective Action Claims

[Dkt. 30].[3]

The instant motion seeks a default judgment against the remaining two defendants –

Chicken-Out, Inc. and Chicken Out the Door, Inc.  Mot. at 1.  The Clerk of the Court entered

default against Chicken Out the Door on May 11, 2015, and against Chicken-Out on June 29,

2015.  See Clerk's Entry of Default as to Chicken Out the Door, Inc. [Dkt. 14]; Clerk's Entry of

Default as to Chicken-Out, Inc. [Dkt. 20].  Because Defendants have not appeared, as a matter of

course no response to Plaintiff's motion has been filed.

---

[3] Although the Court referred this matter to the undersigned solely for resolution of Plaintiff's motion for default
judgment, see Apr. 12, 2016 Minute Order, Plaintiff does devote some argument to the propriety of voluntary
dismissal of her collective-action claims.  See Memo. at 5.  Because Defendants have not answered or otherwise
responded to Plaintiff's complaint, and because Plaintiff's proposed class has not yet been certified, Rule
41(a)(1)(A)(i) compels the Court to dismiss these claims.  See Fed. R. Civ. P. 41(a)(1)(A)(i) ("Subject to Rules
23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court
order by filing[] a notice of dismissal before the opposing party serves either an answer or a motion for summary
judgment[.]"); see also id. 23(e) (setting procedures for voluntary dismissal of the claims of a class once certified).
Accordingly, the undersigned recommends that the Court dismiss Plaintiff's collective-action claims without
prejudice.

Appendix A

# LEGAL STANDARDS

### A.      Default Judgment

Obtaining a default judgment requires two steps.  Lanny J. Davis & Assocs. LLC v. Republic of Equatorial Guinea, 962 F. Supp. 2d 152, 161 (D.D.C. 2013).  First, the plaintiff must request that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Second, the plaintiff must move for entry of a default judgment.  Id. 55(b).  Default judgment is available when "the adversary process has been halted because of an essentially unresponsive party."  Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011).  "Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint."  Id.

However, "[t]he court has considerable latitude in determining the amount of damages." Id. (citation omitted).  "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain."  Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc., 239 F. Supp. 2d 26, 30 (D.D.C. 2002).  "Accordingly, when moving for default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested" using "detailed affidavits or documentary evidence" on which the court may rely. Fanning v. Permanent Solution Indus., Inc., 257 F.R.D. 4, 7 (D.D.C. 2009).  The court may conduct a hearing regarding the scope of damages, Fed. R. Civ. P. 55(b)(2), but is not required to if the affidavits and evidence supporting the motion are sufficiently detailed.  Buckley v. Paperboy Ventures, LLC, 869 F. Supp. 2d 9, 11 (D.D.C. 2012); see also Int'l Painters, 239 F. Supp. 2d at 30 (observing that an evidentiary hearing may not be necessary if damages can "be calculated with relative simplicity").

**B.      Federal, D.C., and Maryland Wage and Hour Laws**

The FLSA, DCMWA, and MWHL all require employers to pay their workers a minimum wage and, if the employee works more than forty hours in a workweek, overtime compensation at the rate of one-and-a-half times the employee's regular hourly rate.  29 U.S.C. § 207(a)(1); D.C. Code § 32-1003(c); Md. Code Lab. & Empl. §§ 3-415, 3-420.  Similarly, the MWPCL provides that upon cessation of employment, an employer must pay "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."  Md. Code Lab. & Empl. § 3-505(a).

It is a long-standing principle in wage law that where an employer fails to produce records of the employee's hours and wages, the employee can meet her burden of proof by "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Andersen v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946); see also Encinas v. J.J. Drywall Corp., 840 F. Supp. 2d 6, 8 (D.D.C. 2012).  When assessing damages under the Andersen standard, a court may draw inferences from oral testimony, sworn declarations, and whatever relevant documentary evidence the plaintiff provides.  See Pleitez v. Carney, 594 F. Supp. 2d 47, 49 (D.D.C. 2009) (relying on plaintiffs' production of "some time sheets," "some paychecks," and "sworn declarations setting out their best recollection of when they worked, what they were paid, and what they were not paid").  Nevertheless, the court's inferences must be consistent with the evidence in the record.  Id. at 51. The Andersen standard also applies to claims under the DCMWA, MWHL, and MWPCL.  See Turner v. Human Genome Sci., Inc., 292 F. Supp. 2d 738, 748 (D. Md. 2003) (claims under the MWHL); Lopez v. Lawns 'R' Us, No. DKC-07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008) (claims

under the MWPCL) (citing <u>Donovan v. Bel-Loc Diner, Inc.</u>, 780 F.2d 1113, 1116 (4th Cir. 1985)); <u>Pleitez</u>, 594 F. Supp. 2d at 49 (claims under the DCMWA).

Although the normal limitations period for an FLSA claim is two years, if an employer willfully violates the FLSA, the statute of limitations extends to three years.  29 U.S.C. § 255(a).  A violation is willful if the employer "'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  <u>Wilson v. Hunam Inn, Inc.</u>, 126 F. Supp. 3d 1, 7 (D.D.C. 2015) (quoting <u>McLaughlin v. Richard Shoe Co.</u>, 486 U.S. 128, 133 (1988)).  "Courts have found willful violations in cases where the [d]efendant knew the FLSA applied, but made no effort to ascertain whether their payroll practices complied with the law."  <u>Id.</u> (citing <u>Ayala v. Tito Contractors</u>, 82 F. Supp. 3d 279, 285–86 (D.D.C. 2015)).  In addition to recovering unpaid compensation, the FLSA provides that an employer "shall be liable to the employee . . . in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  An employer may avoid the liquidated damages penalty only if it "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing" that the failure to pay "was not in violation of the [FLSA]."  <u>Id.</u> § 260.

The DCMWA has a three-year limitations period.  D.C. Code § 32-1013 (1993).  An employer who fails to pay wages as required by the Act is "liable to that employee in the amount of the unpaid wages, and an additional amount as liquidated damages" unless the employer shows "to the satisfaction of the court that [the failure to pay overtime] was in good faith and that the employer had reasonable grounds for the belief that the act or omission was not a violation of this act. . . ."  <u>Id.</u> § 32-1012(b)(2).[4]

---

[4] The DCMWA was amended in early 2015 and now mandates that the amount of liquidated damages to be awarded to victorious plaintiffs is three times the amount of unpaid wages.  <u>Compare</u> D.C. Code § 32-1012(a) (2015), <u>with</u> D.C. Code § 32-1012(a) (1993), appended to Plaintiff's motion as Attachment A.  Because the relevant events

Similarly, the MWHL and MWPCL have a three-year limitations period.  Md. Code, Cts. & Jud. Proc. § 5-101.  An employee seeking to recover unpaid wages or overtime compensation under Maryland law has two avenues to do so:  under the MWHL or under the MWPCL.  See Peters v. Early Healthcare Giver Inc., 97 A.3d 621, 625 (Md. 2014) ("Read together, [the MWHL and the MWPCL] allow employees to recover unlawfully withheld wages from their employer, and provide an employee with two avenues to do so."); id. at 654–55 (holding that an employee "has a right to bring a private cause of action under the [MWPCL] to recover any unlawfully withheld overtime wages").  Under the MWPCL, the court may award "an amount not exceeding 3 times the wage" if it finds that the employer's failure to pay required compensation was "not as a result of a bona fide dispute."  Md. Code Lab. & Empl. § 3-507.2.

## DISCUSSION

### A.    Default Judgment for Violations of Wage Laws

The Clerk of the Court entered default against Defendants because they failed to plead or otherwise respond to Plaintiff's complaint.  By defaulting, Defendants have admitted all well-pleaded allegations in Plaintiff's complaint.  Boland, 763 F. Supp. 2d at 67.  Those allegations establish that Defendants violated the FLSA, the DCMWA, and the MWHL when they failed to pay Plaintiff overtime compensation and that Defendants violated the MWPCL when they failed to pay Plaintiff anything for her last two-and-a-half weeks of work at their Rockville location.

As a threshold matter, Plaintiff's allegations make clear that Defendants managed the restaurants where she worked and that they controlled employment policies at those restaurants, including pay rates and overtime compensation policies.  Compl. ¶¶ 31–33.  Defendants therefore qualify as Plaintiff's "employers" under each statute's broad definition of that term.

occurred from 2010 to 2013, the undersigned applies the pre-2015 version of the DCMWA, which contains no trebling requirement.

Appendix A

See Ayala, 82 F. Supp. 3d at 288 (observing that the broad test for whether an entity is an employer under the FLSA considers "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records'") (quoting Morrison v. Int'l Programs Consortium, Inc., 253 F.3d 5, 11 (D.C. Cir. 2001)); Thompson v. Linda And A., Inc., 779 F. Supp. 2d 139, 146 (D.D.C. 2011) ("[D]eterminations of employer or employee status under the FLSA apply equally under the District of Columbia wage laws."); Marroquin v. Canales, 505 F. Supp. 2d 283, 299 (D. Md. 2007) (reasoning that the ability to hire, set wages, and oversee work are factors bearing on whether an entity is an "employer" under Maryland wage and hour laws).

Second, the allegations in Plaintiff's complaint and the affidavits and documentary evidence attached to her motion demonstrate that Defendants failed to pay her compensation which she was due. Although Plaintiff does not come forward with exact records of her hours worked and wages paid, Andersen holds that she is not required to do so. Andersen, 328 U.S. at 687. Instead, her allegations and averments supply the necessary evidence to support her claim. See Pleitez, 594 F. Supp. 2d at 49.

Plaintiff avers that at Defendants' D.C. location, she regularly worked more than 40 hours per week and averaged at least 42 hours per week. Affidavit of Maria Serrano [Dkt. 31-2] ¶ 4. Similarly, at Defendants' Maryland location, she regularly exceeded 40-hour workweeks and averaged at least 46 hours per week. Id. ¶ 5. To her affidavit are appended several paystubs which she avers are representative of the hours she worked and wages she received while working for Defendants. Id. ¶ 6. Those paystubs cover pay periods in March, April, and May 2014. Id. at 7–9. While the time period encompassed in the paystubs is limited, they do reveal

that Plaintiff was not paid overtime compensation.  For instance, the first pay stub, dated April 4,

2014, shows that Plaintiff worked 89.82 hours during the relevant pay period but was only paid

$808.38.  Id. at 7.  That amount is the product of Plaintiff's regular wage, $9.00, multiplied by

the number of hours she worked.  Missing from her wages are $44.19 in overtime wages, which

is the product of her overtime hours – 9.82 – and the additional $4.50 per hour to which she was

entitled.

        Plaintiff further avers that Defendants knowingly violated their duty to pay overtime

compensation.  She states that Defendants knew of their obligation to pay overtime and yet

refused to pay.  Id. ¶ 8.  Indeed, upon asking one of her managers why she was not being paid for

overtime work, she was told that the company did not pay overtime and that "she should be

grateful to the company for giving [her] extra hours."  Id. ¶ 9.  As for Defendants' complete non-

payment for Plaintiff's final two-and-a-half weeks of work at their Rockville location, Plaintiff

avers she worked 34 hours during that period but has never been paid for that time.  Id. ¶ 11.

When she asked about those final hours of work, her managers stated that "they did not know

anything about it."  Id. ¶ 12.

        These sworn statements establish that, despite the clear overtime requirements in the

FLSA, DCMWA, and MWHL, Defendants refused to pay Plaintiff overtime compensation.

Additionally, Defendants violated the MWPCL by failing to pay Plaintiff for her work during the

period from April 28, 2014, through May 15, 2014, when the Rockville restaurant closed.

Defendants never paid her for this work even after Plaintiff gave them notice that they had failed

to pay her.  Accordingly, the undersigned recommends that the Court enter default judgment

against Defendants.

**B.      Amount of Judgment**

Having determined that Defendants willfully violated the FLSA, DCMWA, MWHL, and

MWPCL when they failed to pay Plaintiff overtime compensation and failed to pay her for her

last two-and-a-half weeks of work, the appropriate measure of Plaintiff's recovery must next be

determined.  Plaintiff seeks:  (1) her unpaid wages and overtime compensation; (2) liquidated

damages; (3) prejudgment interest; and (4) her reasonable costs and attorney's fees.  Compl. at

18–20.

1.      Unpaid Wages and Overtime Compensation

Plaintiff requests unpaid wages and overtime compensation in the amount of $5,625.00.

Memo. at 13.  She seeks compensation for the period beginning three years prior to the

commencement of this action – February 24, 2012 – through her last date of employment with

Defendants – May 15, 2014.  Id.  As noted above, the D.C. and Maryland laws applicable here

carry three-year limitations periods but the FLSA does not.  Nevertheless, Plaintiff's allegations

indicate that she is entitled to recover under the FLSA's extended three-year limitations period

because Defendants' violations were willful.  29 U.S.C. § 255(a); Pineda v. Masonry Constr.,

Inc., 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011) ("Where a default judgment is entered against a

defendant under the FLSA, allegations that the violations were willful are deemed admitted.").

Defendants were on notice of their obligation to pay Plaintiff overtime compensation but they

refused to do so.  See, e.g., Ayala, 82 F. Supp. 3d at 286 ("Knowing that the FLSA applies and

'simply decid[ing] not to comply' . . . is an example of a willful violation.") (quoting Wyland v.

D.C. Gov't, 728 F. Supp. 35, 37 (D.D.C. 1990)); McLaughlin, 486 U.S. at 133 (an employer's

violation is willful if it "either knew or showed reckless disregard for the matter of whether its

conduct was prohibited by the statute"); see also Laffey v. Nw. Airlines, Inc., 740 F.2d 1071,

1085 (D.C. Cir. 1984) (emphasizing that the willfulness standard does not require the plaintiff to show the employer's "evil intent").  Defendants' excuse that it had a policy of not paying overtime wages and the Plaintiff was lucky to be given extra work hours falls well short of a sufficient reason to ignore federal and state wage laws.  And, by virtue of their default, Defendants have forfeited any affirmative defense regarding willfulness under the FLSA.  See John R. Sand & Gravel Co. v. U.S., 552 U.S. 130, 133 (2008) (holding that "the law typically treats a limitations defense as an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver"); Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (finding where an employee had adequately alleged that the employer was on notice of the FLSA's overtime compensation requirements, the defaulting employer forfeited any affirmative defense that its violations were not willful).

Plaintiff seeks unpaid overtime compensation for her work at Defendants' D.C. and Rockville restaurants.  For the period from February 24, 2012, through mid-October 2013, Plaintiff worked at the D.C. location and regularly worked 42 hours per week.  As a result, she estimates that she is owed 2 hours of overtime compensation for each week she worked. Because her regular hourly rate was always $9.00, this means that she is owed an additional $9.00 – $4.50 times 2 hours – for each week of work at the D.C. restaurant.  See Affidavit of Jamie Crook [Dkt. 31-3] ¶ 5(c).  $9.00 per week multiplied by 86 – the number of weeks she worked in D.C. – comes to $774.00 in unpaid overtime.  Plaintiff seeks unpaid overtime for her work at the Rockville restaurant from late November 2013 through April 27, 2014.  She regularly worked 46 hours per week during this period, thus leaving 6 hours of uncompensated overtime per week.  See id. ¶ 5(d).  At an hourly rate of $9.00, she is owed an extra $27.00 per week for these 22 weeks of work.  $27.00 per week multiplied by 22 weeks totals $594.00.

Appendix A

Plaintiff also seeks to recover her unpaid wages for the period from April 28, 2014,

through May 15, 2014 – the last two-and-a-half weeks she worked for Defendants.  Memo. at 14.

She worked 34 hours per week during this period.  Id.  Having never been paid for any of those

hours, Plaintiff is owed her hourly wage of $9.00 per hour multiplied by 2.5 weeks of 34-hour

days, resulting in $765.00 in unpaid wages.  See Affidavit of Jamie Crook [Dkt. 31-3] ¶ 6.

> 2.   Liquidated Damages

For her unpaid overtime at the D.C. restaurant, Plaintiff also requests that the Court

award an equal amount as liquidated damages under the FLSA and the DCMWA.  Doubling her

unpaid overtime at the D.C. location equals $1,548.00.  For the Rockville restaurant, Plaintiff

seeks an additional amount equal to two times her unpaid overtime under the MWPCL's treble

damages provision.  That makes the total amount sought for her work in Maryland $1,782.00.

Finally, for Defendants' failure to pay her for her last two-and-a-half weeks of work, Plaintiff

again requests trebled damages under the MWPCL, raising the total request for these final weeks

to $2,295.00.

Plaintiff is entitled to the liquidated damages she requests.  Upon recovery under the

FLSA for unpaid wages, the statute mandates that the court award liquidated damages in an

amount equal to the unpaid wages.  See 29 U.S.C. § 216(b).  The pre-2015 DCMWA gives

discretion to the court, requiring that it award "an additional amount as liquidated damages"

without specifying the amount to award.  See D.C. Code § 32-1012 (1993).  Both statutes have a

built-in escape hatch for a defendant employer.  If the employer can prove that it acted in good

faith or reasonably believed that its failure to pay compensation was not a violation of the statute,

the court may, in its discretion, award no liquidated damages at all or some amount less than the

full amount authorized in the statute.  See 29 U.S.C. § 260; D.C. Code § 32-1012 (1993).

However, Defendants' default means that they cannot meet their burden to prove up this good-faith affirmative defense.  <u>See</u> <u>Ventura v. L.A. Howard Constr. Co.</u>, Case No. 14–cv–01884 (CRC), 2015 WL 5692932, at *4 (D.D.C. Sept. 28, 2015); <u>Radtke v. Caschetta</u>, No. CV 06-2031 (JMF), 2014 WL 3827498, at *2 (D.D.C. Feb. 7, 2014) ("[T]he burden of proof is on the defendants to show that they acted 'in good faith' and had 'reasonable grounds for believing' that they were not violating the FLSA.") (quoting 29 U.S.C. § 260).  As a result, Plaintiff is entitled to a doubling of her unpaid wages for her work in D.C. under the FLSA.[5]

The analytic structure governing damages for the MWHL and MWPCL is slightly different, but the result is the same.  Plaintiff has elected to proceed on her claim for violation of the MWHL pursuant to the MWPCL, which she is entitled to do.  <u>See</u> <u>Peters</u>, 97 A.3d at 625. The MWPCL, like the DCMWA, gives the court discretion to award "an amount not exceeding 3 times the wage" if it finds that the employer's failure to pay required overtime compensation was "not as a result of a bona fide dispute."  Md. Code Lab. & Empl. § 3-507.2.  Yet unlike the FLSA and DCMWA, the MWPCL allows a court to award up to treble damages "in lieu of a flat payment of unpaid wages."  <u>See</u> <u>Imgarten v. Bellboy Corp.</u>, 383 F. Supp. 2d 825, 850 (D. Md. 2005).  "[T]he Payment Law's treble damages provision does not authorize treble damages in addition to the unpaid wage. . . .  Rather, the statute caps an employee's award at three times that wage."  <u>Id.</u>

A bona fide dispute is "'a legitimate dispute over the validity of the claim or the amount that is owing [ ]' where the employer has a good faith basis for refusing an employee's claim for

---

[5] For her work in the District, Plaintiff seeks an award of liquidated damages equal to her unpaid wages.  Memo. at 13–14.  Although two statutes, the FLSA and the DCMWA, apply to that portion of her claim, she does not seek two awards of liquidated damages for that time.  <u>See id.</u>  Nor could she, since in this District awards under the FLSA's and DCMWA's liquidated damages provisions would offset each other.  <u>See</u> <u>Ventura</u>, 2015 WL 5692932, at *3–4 (making one award of liquidated damages for claims under both the FLSA and DCMWA).  Furthermore, because the FLSA makes an award of liquidated damages mandatory, the undersigned need not address the issue of the Court's discretion to award liquidated damages under the DCMWA.

Appendix A

unpaid wages." Peters, 97 A.3d at 657 (quoting Admiral Mort., Inc. v. Cooper, 745 A.2d 1026,

1031 (Md. 2000)).  The employer has the burden to show that he has an "'actual, subjective

belief that [his] position is objectively and reasonably justified.'"  Id. (quoting Barufaldi v.

Ocean City, Md. Chamber of Commerce, Inc., 47 A.3d 1097, 1103 (Md. 2012)).  A bona fide

dispute might result from "[a]n incorrect legal belief, such as federal preemption."  Id. at 660

n.12.

      As with the good-faith defense under the FLSA and DCMWA, here Defendants, having

not appeared, have presented no evidence of a bona fide dispute as to their obligation to pay

Plaintiff or the amount they owe her.  Id. at 627–28.  Yet because of the permissive language in

MWPCL (distinct from the mandatory language in the FLSA), "an employee is not

presumptively entitled to enhanced damages, even if the court finds that wages were withheld

without a bona fide dispute."  Id. at 662.  The Maryland Court of Appeals has declined to give

specific guidance to trial courts exercising their discretion under the enhanced damages provision

of the MWPCL, but it has said that "trial courts are encouraged to consider the remedial purpose

of the WPCL when deciding whether to award enhanced damages to employees."  Id. at 663.

      In a decision following the ruling in Peters, a Maryland district court found treble

damages appropriate because of "the need for remedial action to encourage employers to pay

their employees in full and the 'practical difficulties that employees have in bringing lawsuits to

recover wages owed.'"  Skripchenko v. VIRxSYS Corp., Civil Action No. TDC–13–0004, 2014

WL 4826788, at *12 (D. Md. Sept. 26, 2014).  In that case, the employer, who did appear and

defend, did "not even attemp[t] to identify a legal basis for its failure to pay their employees their

earned wages."  Id. (emphasis in original).  The court concluded that "[b]ecause there was

absolutely no legal defense to the claim for unpaid wages, and with due consideration of the

remedial purposes of the statute to provide a greater incentive for employers to pay wages in full," treble damages were appropriate.  Id.

Some other Maryland district courts have established a third consideration for awarding enhanced damages – whether the plaintiff has proved any consequential damages resulting from the failure to pay wages.  See, e.g., Lopez, 2008 WL 2227353, at *3 ("Enhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification."); Castillo v. D&P Prof'l Servs., Inc., Civil Action No. DKC 14–1992, 2015 WL 4068531, at *6–7 (D. Md. July 2, 2015); Monge v. Portofino Ristorante, 751 F. Supp. 2d 789, 799 (D. Md. 2010).  Lacking evidence that the plaintiff suffered consequential damages from the defendants' MWPCL violations, these courts concluded that doubled, rather than trebled, damages were appropriate.  Lopez, 2008 WL 2227353, at *3; Castillo, 2015 WL 4068531, at *6–7; Monge, 751 F. Supp. 2d at 799.

Like Skripchenko, here Defendants have proffered no basis whatsoever for their failure to pay Plaintiff overtime compensation or their failure to pay her anything for her final two-and-a-half weeks of work.  This is primarily because Defendants have not appeared, but the evidence before the undersigned indicates that Defendants could not come up with viable reasons even if they had appeared.  Defendants, after being notified of their failure to pay Plaintiff overtime, stated that the company did not pay overtime and that "she should be grateful to the company for giving [her] extra hours."  Affidavit of Maria Serrano [Dkt. 31-2] ¶ 9.  When confronted about their failure to pay Plaintiff for her last two-and-a-half weeks of work, Defendants merely stated that "they did not know anything about it."  Id. ¶ 12.  These statements, if they could be

generously described as excuses for nonpayment, are not persuasive.  There is no suggestion here that Plaintiff was anything other than an ordinary, hourly wage employee who was not exempt from the protections of minimum wage and overtime laws.  See Compl. ¶ 64.  Thus, the Court has no evidence that Defendants held any incorrect but forgivable belief, legal or factual, regarding Plaintiff's right to payment.  See Peters, 97 A.3d at 657, 660 n.12.  Defendants therefore lack any bona fide dispute that might forestall an award of enhanced damages.

Considering the remedial purposes of the MWPCL and the total lack of any credible defense to Plaintiff's claim, the undersigned recommends that the Court award Plaintiff trebled damages on these claims.  Although Plaintiff does not allege any consequential damages resulting from Defendants' violations of the MWPCL, the undersigned recommends that the Court reject that factor as a requirement for a full award of enhanced damages.  In Lopez, where this factor originated, the court cited no authority for the proposition that consequential damages are a relevant consideration in awarding enhanced damages.  See Lopez, 2008 WL 2227353, at *3.  Moreover, in its most recent pronouncement on the subject, the Maryland Court of Appeals did not raise the existence of consequential harm as an element for the court's consideration.  See Peters, 97 A.3d at 663.  Thus, the undersigned does not find that a lack of consequential damages militates in favor of merely doubled, rather than trebled, damages.[6]

Accordingly, the undersigned recommends that the Court award Plaintiff all the liquidated and enhanced damages she requests.

---

[6] As with the FLSA-DCMWA interaction, see supra note 5, here Plaintiff does not seek liquidated damages under the FLSA and a separate award under the MWPCL.  See Memo. at 14.  This is proper, since Plaintiff is "entitled to recover liquidated damages under the FLSA or treble damages under the Maryland Wage Payment and Collection Law, but not both."  Quiroz v. Wilhelm Commercial Builders, Inc., Civil Action No. WGC–10–2016, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011).

3.      <u>Attorney's Fees and Costs</u>

Plaintiff seeks to recover $1,609.30 in attorney's fees and $574.50 in costs incurred during this litigation.  Memo. at 15.  The FLSA, DCMWA, MWHL, and MWPCL provide for an award of reasonable attorney's fees and costs to a prevailing plaintiff.  29 U.S.C. § 216(b); D.C. Code §§ 32-1012(c), 32-1308(b) (1993); Md. Code Lab. & Empl. §§ 3-427(d), 3-507.2(b).  Indeed, an attorney's fee award is mandatory under the FLSA, the DCMWA, and the MWHL.  <u>See</u> <u>Falica v. Advance Tenant Servs., Inc.</u>, 384 F. Supp. 2d 75, 77 (D.D.C. 2005); D.C. Code § 32-1308(b)(1) (1993); Md. Code Lab. & Empl. § 3-427(d).[7]  By obtaining a default judgment against Defendants, Plaintiff qualifies as a prevailing party entitled to attorney's fees and costs.  <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983) (holding that a plaintiff is a "prevailing party" if she "'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit'") (quoting <u>Nadeau v. Helgemoe</u>, 581 F.2d 275, 278–79 (1st Cir. 1978)); <u>see also</u> <u>Falica</u>, 384 F. Supp. 2d at 77 (noting that the <u>Hensley</u> analysis applies in FLSA cases).

The only matter left for the Court, then, is determining what a reasonable award of fees and costs is in this case.  "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984).

### a.      **Reasonable Rate**

Rates are reasonable if they are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."

---

[7] Under MWPCL, an award of fees, like an award of enhanced damages, is discretionary.  Md. Code Lab. & Empl. § 3-507.2(b).  However, the undersigned concludes that a fee award is appropriate for the same reasons that support a full award of enhanced damages.  <u>See</u> <u>supra</u> Section B.2.

Appendix A

Covington v. Dist. of Columbia, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (internal quotation marks

omitted).  To assess a proposed hourly rate, the court considers three elements:  (1) the attorney's

billing practices; (2) the attorney's skills, experience, and reputation; and (3) the prevailing

market rates in the relevant community.  Id. at 1108.  In the recent Eley decision, the D.C.

Circuit observed that determining a prevailing market rate is "inherently difficult," but

nevertheless emphasized the "importance of fixing the prevailing hourly rate in each case with a

fair degree of accuracy."  Eley v. Dist. of Columbia, 793 F.3d 97, 100 (D.C. Cir. 2015) (internal

quotations omitted).  To meet its burden to show that the requested rate is reasonable, a party

must "'produce satisfactory evidence – in addition to the attorney's own affidavits – that the

requested rates are in line with those prevailing in the community for similar services by lawyers

of reasonably comparable skill, experience and reputation.'"  Id. (quoting Blum, 465 U.S. at 895

n.11).

One type of additional evidence permitted in this Circuit is attorney's fee matrices, such

as the Laffey Matrix prepared by the Civil Division of the United States Attorney's Office for the

District of Columbia ("USAO Laffey Matrix").  Id.  The USAO Laffey Matrix was created to

demonstrate the "prevailing rates in the community for lawyers of comparable skill, expertise

and reputation in complex federal litigation."  Laffey v. Nw. Airlines, Inc., 572 F. Supp. 354,

371–72 (D.D.C. 1984).  The original USAO Laffey Matrix is now more than thirty years old and

must be updated to account for inflation.  See Eley, 793 F.3d at 101.  Competing Laffey Matrices

have developed because litigants disagree as to whether the Laffey rates should be adjusted for

inflation by using the Consumer Price Index for All Urban Consumers of the United States

Bureau of Labor Statistics (as is done in the USAO Laffey Matrix) or by using the Legal

Appendix A

Services Index of the Bureau of Labor Statistics – known as the "LSI Laffey Matrix." Id.  The

LSI Laffey rates exceed those found in the USAO Laffey Matrix.  Compare https://www.justice.

gov/usao-dc/file/796471/download, with http://www.laffeymatrix.com/see.html.

      But while such attorney's fee matrices can "provide a useful starting point" in calculating

the prevailing market rate, see Covington, 57 F.3d at 1109, as Eley confirms, a fee applicant does

not meet its burden merely by submitting the USAO or LSI Laffey Matrices with a fee

application.  Rather, the applicant is obliged to demonstrate that the suggested rates in the matrix

are "in line with those prevailing in the community for similar services."  Eley, 793 F.3d at 104

(emphasis in original); id. at 100 ("'An applicant is required to provide specific evidence of the

prevailing community rate for the type of work for which he seeks an award.'") (quoting Nat'l

Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1325 (D.C. Cir. 1982) (emphasis

in original)).  Thus, in Eley, the Circuit court rejected the application of LSI Laffey rates to

litigation under the Individuals with Disabilities Education Act, concluding that the plaintiffs had

not come forward with sufficient evidence showing that any Laffey matrix, USAO, LSI, or

otherwise, was appropriate.  Id. at 105.  To succeed where the Eley plaintiffs failed, a fee

applicant can supplement fee matrices with other evidence such as "surveys to update the[m];

affidavits reciting the precise fees that attorneys with similar qualifications have received from

fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or

through settlement to attorneys with comparable qualifications handling similar cases."  Id. at

101 (quoting Covington, 57 F.3d at 1109); see also id. at 104, n.5 ("Evidence of the prevailing

market rate can take many forms."); Covington, 57 F.3d at 1113 (Henderson, J. dissenting) ("'A

statistically reliable, well-documented, and extensive survey of the rates clients pay for a certain

sub-market of legal services would be powerfully persuasive.'").

However, the Court of Appeals has clarified since the decision in <u>Eley</u> that a party may face a lower burden to justify the application of <u>Laffey</u> rates unless their opponent identifies "a submarket in which attorneys' hourly fees are generally lower than the rates in . . . the <u>Laffey</u> Matrices." <u>Salazar ex rel. Salazar v. Dist. of Columbia</u>, 809 F.3d 58, 64 (D.C. Cir. 2015). In <u>Salazar</u>, because the party opposing the fee award did not identify such a submarket, the D.C. Circuit concluded that it had "acquiesce[ed] in the notion that the litigation at issue qualifies as complex federal litigation (as to which the <u>Laffey</u> Matrices apply)." <u>Id.</u>

Additionally, the Court of Appeals found that the plaintiffs had carried their burden to justify the application of LSI <u>Laffey</u> rates rather than USAO <u>Laffey</u> rates. <u>Id.</u> at 65. The plaintiffs in that case submitted an affidavit from an economist, who opined that the LSI <u>Laffey</u> Matrix better measures the change in prices for legal services in Washington, D.C. <u>Id.</u> at 64. They also submitted "billing rates tables demonstrating the difference between average national law firm rates and the LSI update to the <u>Laffey</u> Matrix, as well as the difference between average national law firm rates and the USAO update to the <u>Laffey</u> Matrix." <u>Id.</u> at 65. Those tables showed that the LSI <u>Laffey</u> Matrix more closely approximates the average national law firm rates. <u>Id.</u> The Circuit court noted that rates in Washington, D.C. often far exceed even the LSI <u>Laffey</u> rates. <u>Id.</u> The Court of Appeals concluded that "[w]ith these numbers and submissions in the record, the district court's point that 'the LSI-adjusted matrix is probably a conservative estimate of the actual cost of legal services in this area,' does not appear illogical." <u>Id.</u> (quoting <u>Salazar v. Dist. of Columbia</u>, 991 F. Supp. 2d 39, 48 (D.D.C. 2014)).

Plaintiff has been represented in this case by the Washington Lawyers' Committee for Civil Rights and Urban Affairs ("Lawyers' Committee") and Relman, Dane & Colfax PLLC ("RDC"). Her request for $1,609.30 in fees is solely for work done by the Lawyers' Committee.

Appendix A

<u>See</u> Memo. at 15.  The Lawyers' Committee's billing rates are based on the rates in the LSI

<u>Laffey</u> Matrix, which attorney Dennis Corkery, a senior staff attorney at the Lawyers'

Committee who was the primary attorney in this matter, avers is the rate the Lawyers'

Committee uses to set its customary hourly rates.  Affidavit of Dennis Corkery [Dkt. 31-4] ¶ 10.

The Lawyers' Committee has for decades represented plaintiffs in civil rights, employment, and

wage and hour litigation.  <u>Id.</u> ¶ 6.

Plaintiff seeks compensation for the time of Lawyers' Committee attorney Corkery and

two paralegals, Alicia Danze and Evelyn Nunez.  <u>Id.</u> ¶¶ 11–18.  Corkery graduated from George

Washington University Law School in 2012 and has been in practice in the D.C. area since that

time.  <u>Id.</u> ¶¶ 4–5.  He requests a rate of $328 per hour for work he performed prior to June 1,

2015 – the LSI <u>Laffey</u> rate for an attorney one to three years out of law school – and $406 per

hour for all work performed after that date – the LSI <u>Laffey</u> rate for an attorney four to seven

years out of law school.  <u>Id.</u> ¶ 11.  Paralegal Danze seeks a rate of $179 per hour, which is the

LSI <u>Laffey</u> rate applicable to her for the relevant time period.  <u>Id.</u> ¶¶ 13–15.  For paralegal

Nunez, Plaintiff requests a rate of $180 per hour, consistent with the LSI <u>Laffey</u> rate applicable

to the period when Nunez worked on the case.  <u>Id.</u> ¶¶ 16–18.

To further support the use of the LSI <u>Laffey</u> rates, Plaintiff offers the sworn statements of

attorney Matthew Kaplan, who has a solo practice in Washington which focuses "in significant

part" on FLSA litigation.  Affidavit of Matthew Kaplan [Dkt. 31-5] ¶ 7.  Kaplan has practiced

law since 2003 and has over a decade of experience in FLSA matters.  <u>Id.</u> ¶¶ 5–6.  He avers that,

having practiced alongside the Lawyers' Committee, and attorney Corkery and paralegal Danze

in particular, in prior complex FLSA cases, he believes that the requested LSI <u>Laffey</u> rates are

reasonable.  <u>Id.</u> ¶¶ 9–10.  Finally, Plaintiff cites to several prior orders in this Circuit approving

the use of LSI <u>Laffey</u> rates.  <u>See</u> <u>Salazar</u>, 809 F.3d at 64; <u>Citizens for Responsibility & Ethics in</u>

<u>Washington v. U.S. Dep't of Justice</u>, No. 1:11-cv-00374 (CRC), 2016 WL 554772, at *1 (D.D.C.

Feb. 11, 2016); <u>Merrick v. Dist. of Columbia</u>, No. CV 14-1174 (ABJ), 2015 WL 5732105, at *9

(D.D.C. Sept. 29, 2015).

 The undersigned agrees with Plaintiff that the LSI <u>Laffey</u> rates are reasonable and

justified in this case.  First, Plaintiff's counsel avers that the Lawyers' Committee uses LSI

<u>Laffey</u> rates as their customary hourly rates.  <u>Covington</u>, 57 F.3d at 1108 (holding that one

element of a rate determination is the attorney's billing practices).  Second, the undersigned finds

that "the skill, experience, and reputation" of the Lawyers' Committee, and its staff who worked

on this case in particular, are substantial.  <u>Id.</u>

 Finally, Plaintiff has established that the "prevailing market rate[s] in the relevant

community" are the LSI <u>Laffey</u> rates.  <u>Id.</u>  Unsurprisingly, given that they are in default,

Defendants have not identified FLSA litigation as "a submarket in which attorneys' hourly fees

are generally lower than the rates in . . . the <u>Laffey</u> Matrices" and have therefore "acquiesce[ed]

in the notion that the litigation at issue qualifies as complex federal litigation (as to which the

<u>Laffey</u> Matrices apply)."  <u>Salazar</u>, 809 F.3d at 64.  With that hurdle cleared, the more difficult

question is whether Plaintiff has justified the use of the higher LSI <u>Laffey</u> rate rather than the

USAO <u>Laffey</u> rate in this case.  <u>See id.</u>

 Plaintiff's cited cases do not help much in this regard.  Although the use of LSI <u>Laffey</u>

rates was approved in those cases, none involved a wage claim.  And this Court has recently

observed that "Courts in this District routinely award USAO <u>Laffey</u> rates in Fair Labor Standards

Act cases."  <u>See</u> <u>Martinez v. Asian 328, LLC</u>, Case No. 15-cv-1071 (GMH), 2016 WL 1698261,

at *7 (D.D.C. Apr. 27, 2016); <u>see also</u> <u>Ventura</u>, 2015 WL 6153310, at *2; <u>Bradshaw</u>, 2012 WL

Appendix A

2803401, at *2; <u>Driscoll v. George Washington Univ.</u>, 55 F. Supp. 3d 106, 120 (D.D.C. 2014);

<u>Al-Quraan v. 4115 8th St. NW, LLC</u>, 123 F. Supp. 3d 1, 3 (D.D.C. 2015).  Plaintiff has not cited

to any case in this District awarding LSI <u>Laffey</u> rates for FLSA work, and this Court can locate

none.

Yet here the undersigned need not face the difficult question of the quantum and quality

of evidence needed to justify LSI <u>Laffey</u> rates post-<u>Salazar</u>.  This is because D.C. law itself

mandates that the Court use LSI <u>Laffey</u> rates.  In fee awards under the DCMWA, the D.C. Code

provides:

> In any judgment in favor of any employee under this section, and in any
> proceeding to enforce such a judgment, the court shall award to each attorney for
> the employee an additional judgment for costs, including attorney's fees
> computed pursuant to the matrix approved in <u>Salazar v. District of Columbia</u>, 123
> F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly
> rates for attorney's services. The court shall use the rates in effect at the time the
> determination is made.

D.C. Code § 32-1308(b)(1).  In <u>Salazar</u>, the district court determined that the appropriate <u>Laffey</u>

matrix was the LSI Matrix, not the USAO Matrix.  <u>Salazar v. Dist. of Columbia</u>, 123 F. Supp. 2d

8, 15 (D.D.C. 2000).  Indeed, the judgment of the D.C. government that LSI <u>Laffey</u> rates are

appropriate for wage claims brought in this District is persuasive evidence that such rates are the

prevailing rates in the community for this work.  <u>See</u> <u>Makray v. Perez</u>, Civil Action No. 12-520

(BAH), 2016 WL 471271, at *16 (D.D.C. Feb. 8, 2016) (finding that section 32-1308(b)(1)

represents "the endorsement of the [LSI] Matrix by the local governing body in the context of

wage enforcement").[8]

---

[8] The only reason not to adopt LSI <u>Laffey</u> rates in this case might be if the Court could reasonably segregate hours
expended on the D.C. claims, for which LSI <u>Laffey</u> rates are required, and the Maryland and federal claims, for
which no rate is statutorily specified.  The undersigned finds that with such a low number of hours claimed for a
case of this type, <u>see</u> <u>infra</u> at 24, segregating counsel's time is not reasonable under the circumstances.

Appendix A

The undersigned therefore recommends that the Court find that the requested LSI <u>Laffey</u>

rates are appropriate and reasonable in this case.

### b.        Reasonable Hours

Attorney Corkery avers that the Lawyers' Committee expended 1.7 hours of attorney

time and 5.3 hours of paralegal time on this case.  <u>See</u> Affidavit of Dennis Corkery [Dkt. 31-4]

¶¶ 15, 18.  Corkery states that he has reviewed all time diaries for work done on this matter to

ensure that all the time submitted is reasonable.  <u>Id.</u> ¶¶ 3, 8.  He further avers that all hours

submitted herein were those actually worked and that all such time was contemporaneously

recorded with details as to the date, time, and activity performed.  <u>Id.</u> ¶ 9.  Corkery avers that he

has excluded from the instant request time billed by attorneys other than himself and time spent

on a motion for conditional class certification that was never filed.  <u>Id.</u> ¶ 20.  Plaintiff contends

that the fee request therefore reflects the exercise of "significant billing judgment, and constitutes

approximately one-fifth of the total fees expended by Lawyers' Committee staff on this matter."

<u>See</u> Memo. at 16; Affidavit of Dennis Corkery [Dkt. 31-4], Attachment A.  In her motion,

Plaintiff further claims that her attorneys excluded all time expended by RDC attorneys and staff,

amounting to hundreds of hours, in developing the case, investigating its legal and factual

underpinnings for it, drafting the complaint, and preparing the instant motion.  Memo. at 16.

Corkery's affidavit and the attached timesheet, which reflect entries made

contemporaneously with the work performed, provide sufficient detail to enable the Court to

independently review the reasonableness of the hours Plaintiff claims.  <u>Nat'l Ass'n of Concerned</u>

<u>Veterans</u>, 675 F.2d at 1325 (a fee application "must be sufficiently detailed to permit the District

Court to make an independent determination whether or not the hours claimed are justified" and

should normally include "detailed summaries based on contemporaneous time records indicating

the work performed by each attorney for whom fees are sought"). Having undertaken an

independent review of the claimed hours, the undersigned finds "[t]he tasks were not duplicative,

all tasks arose from this action, and the time counsel expended on each task was not excessive."

Ventura v. Bebo Foods, 738 F. Supp. 2d 8, 34 (D.D.C. 2010). Accordingly, the undersigned

recommends that the Court find that the requested hours are reasonable.

### c.   Costs

Plaintiff also requests that the Court reimburse RDC for some of its litigation costs,

including the court filing fee and the cost of serving the complaint on these two Defendants.

Affidavit of Jamie Crook [Dkt. 31-3] ¶ 10. Those costs total $574.50. The undersigned finds

those costs to be reasonable and compensable. See Ventura, 738 F. Supp. 2d at 33–34 (awarding

full costs to FLSA plaintiffs); Bradshaw, 2012 WL 2803401, at *2 n.4 (including filing fee and

service of process expenses in an award of costs pursuant to the FLSA).

### 4.   Pre- and Post-Judgment Interest

In her complaint, Plaintiff requests an award of pre-judgment interest on all amounts

owed. Compl. at 19. Yet this Court has held that pre-judgment interest is not available under the

FLSA because the remedies provided therein – recovery of unpaid wages and overtime plus

liquidated damages – are exclusive of any other. See Ventura, 738 F. Supp. 2d at 22–23.

Plaintiff appears to acknowledge this reality in her motion, stating that she will seek an award of

pre-judgment interest only if "the Court declines to award liquidated damages as requested

herein." Memo. at 13 n.5 (citing Radtke, 2014 WL 3827498, at *4 (holding that pre-judgment

interest is permitted where liquidated damages are not awarded)). Plaintiff has not provided the

Court with any calculation of the pre-judgment interest she might be owed. But because the

Appendix A

undersigned recommends that the Court grant Plaintiff the liquidated damages she seeks, there is little incentive to require Plaintiff to undertake that difficult calculation.

In contrast to pre-judgment interest, courts routinely award post-judgment interest pursuant to 28 U.S.C. § 1961 in FLSA cases, regardless of any liquidated damages award. <u>See, e.g.</u>, <u>Lopez v. Rodriguez</u>, 668 F.2d 1376, 1381 n.10 (D.C. Cir. 1981). The undersigned therefore recommends that the Court permit post-judgment interest to run on the judgment in this case at the rate specified in the statute.

## CONCLUSION

For the reasons stated above, the undersigned recommends that the Court grant in part and deny in part Plaintiff's motion for default judgment. The undersigned further recommends that the Court enter judgment in favor of Plaintiff in this matter in the amount of $5,628.00 in unpaid wages, overtime compensation, and liquidated damages, $1,609.30 in attorney's fees, and $574.50 in costs. The undersigned further recommends that the Court deny an award of pre-judgment interest but direct that post-judgment interest accrue on the judgment as provided in 28 U.S.C. § 1961. Finally, the undersigned recommends that the Court dismiss Plaintiff's collective-action claims without prejudice pursuant to her notice of voluntary dismissal.

*     *     *     *     *

The parties are hereby advised that failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

Date: May 13, 2016

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE